IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 08-11751MER |
| ADAM AIRCRAFT INDUSTRIES, INC., ) | |
| ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| JEFFREY A. WEINMAN, TRUSTEE ) | Adversary No. 09-1481 MER |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CITY OF PUEBLO, COLORADO, ) | |
| et al., ) | |
| ) | Signed/Docketed |
| Defendants. ) | May 30, 2012 |

**ORDER DENYING IN PART AND GRANTING IN PART TRUSTEE'S MOTION TO ALTER OR AMEND JUDGMENT**

This matter comes before the Court on the Trustee's Motion to Alter or Amend Judgment (the "Motion"), filed by the Plaintiff in this case, Chapter 7 Trustee Jeffrey Weinman (the "Trustee"), and the Response thereto filed by Defendant City of Pueblo, Colorado ("Pueblo"). In the Motion, the Trustee requests this Court to alter or amend its March 23, 2012 Order Valuing Pueblo Collateral, Allowing Partial Surcharge, and Determining Priority of Tax Lien.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(K), as it involves determination of the validity, priority, or extent of a lien.

**BACKGROUND FACTS**

The Trustee's Motion seeks a ruling from the Court allocating the $10 million in proceeds from the sale of all of the Debtor's asset among Pueblo and other secured claimants. The Trustee states the Court failed to fulfill its duty to make such an allocation. In addition, the Trustee disputes the Court's limitation of the Trustee's

surcharge to 17.75%, arguing the evidence presented of actual expenses incurred supports a surcharge of 18%. The Trustee criticizes, but does not seek alteration of, the Court's valuation of the Pueblo assets at $898,560.15.

In its Response, Pueblo contends the Trustee is attempting to reargue that the value of the Pueblo assets should be compared to the Debtor's total assets and other secured claims. Pueblo asserts this argument was addressed in the Court's March 23, 2012 Order, and does not warrant alteration or amendment of that Order. Pueblo further maintains the Trustee's Complaint did not seek allocation of funds received from the sale of the Debtor's assets, but only sought a valuation of the assets serving as collateral for the debt of Pueblo. Pueblo also points out the other secured creditors with interests in the proceeds of the sale of the Debtor's assets were not represented in this proceeding, and no evidence was presented as to the value of any of the Debtor's assets except the assets serving as collateral for Pueblo. In addition, Pueblo also argues there is no basis to raise the Trustee's surcharge to 18%.

## DISCUSSION

The Motion seeks relief under FED. R. CIV. P. 59, made applicable to bankruptcy proceedings by FED. R. BANKR. P. 9023. Rule 59(e) provides a motion to alter or amend a judgment must be filed within 28 days of the entry of the judgment, while Bankruptcy Rule 9023 shortens the time to 14 days in bankruptcy matters.[1]

Rule 59(a), in turn, sets forth the grounds for a motion under Rule 59(e):

(1) Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues–and to any party–as follows:
. . .
    (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

"Grounds warranting a motion to reconsider [under Rule 59(e)] include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[2] Rule 59(e) motions are appropriate where a court has misapprehended the facts, a party's position, or

---

[1] Here, the Trustee's Motion was filed 14 days after the March 23, 2012 Order, and so is appropriately considered under Rule 59(e).

[2] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)).

controlling law.[3]  However, a Rule 59(e) motion "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."[4]

The Court's records reflect the Complaint in this adversary proceeding was filed August 11, 2009 against the following defendants: 1) Pueblo; 2) Douglas County Treasurer; 3) Pueblo County Treasurer; 4) Leaf Funding, Inc.; 5) Leaf Financial Corpration, dba VAResources/Dolphin Capital Corp; 6) Leading Edge Aerospace, LLC; 7) Arnold Machinery Company, dba Materials Handling Equipment Co., 8) Eastgroup Properties, L.P.; 9) Corporate Express, Inc., aka Corporate Express Office Products, Inc.; 10) U.S. Express Leasing, Inc.; 11) National City Commercial Capital Company, LLC; 12) Expeditors International of Washington, Inc.; and 13) Wells Fargo Financial Leasing, Inc.  Among the claims for relief were a claim for a determination of the extent, validity and priority of liens as to all the defendants, pursuant to 11 U.S.C. § 506.[5] Arguably, a claim seeking a finding of the extent, validity, and priority of the defendants' liens in the proceeds of the sale of the Debtor's assets could constitute a request to allocate such proceeds among the defendants.

However, on September 28, 2009, Defendants Arnold Machinery Company dba Materials Handling Equipment Co. and Wells Fargo Financial Leasing, Inc. were dismissed on the Trustee's motion because those defendants had executed releases and assignments.  The releases and assignments freed the estate and the Trustee from any liens or security interests in the sales proceeds, and assigned any interests they might have to the Trustee.  In addition, on October 2, 2009, the Court granted the Trustee's motion for default judgment against Defendant Corporate Express, Inc., aka Corporate Express Office Products, Inc., finding Corporate Express had no secured interest in the sales proceeds, and finding the Trustee's request for a surcharge against them to be moot.  A similar default judgment entered against Defendant U.S. Express Leasing, Inc. on November 6, 2009.

Defendants Leading Edge Aerospace, LLC, Eastgroup Properties, L.P., Expeditors International of Washington, Inc., Leaf Funding, Inc., and Leaf Financial Corporation dba VAResources/Dolphin Capital also entered into agreements with the Trustee.  On December 16, 2019, the Court entered an Order Granting Trustee's Partial Motion to Dismiss Defendants Leading Edge Aerospace, LLC and East Group Properties, L.P.  On February 8, 2010, the Court entered an Order Granting Trustee's Partial Motion to Dismiss as to Defendants Expeditors International of Washington, Inc., Leaf Funding, Inc., and Leaf Financial Corporation dba VARersources/Dolphin Capital. Also on February 8, 2010, and also on the Trustee's motion, the Court entered an Order Granting Trustee's Partial Motion to Dismiss as to Defendants Douglas County

---

[3]  See Paraclete, 204 F.3d at 1012.

[4]  Id. (citing Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991)).

[5]  Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

Treasurer and Pueblo County Treasurer. Finally, on August 24, 2010, the Court entered an Order Granting Trustee's Partial Motion to Dismiss as to Defendant PNCEF, LLC, fka National City Commercial Capital Company, LLC.

Thus, as of August 24, 2010, the only Defendant in this action was Pueblo. The trial in this matter involved only Pueblo, and no evidence at that trial was presented as to the value of any of the Debtor's assets except the Pueblo Collateral. As the Court noted in its March 23, 2012 Order:

> [T]he Trustee believes the Court should consider the gross allocation of 2.3%, because no separate appraisals or bids exist to provide evidence of value of the Pueblo equipment. The problem with this argument is the case law requires the Court to do just the opposite of what the Trustee suggests. The Court must determine the value of individual assets as a portion of the entire sale. Indeed, the Trustee's post-trial brief recognizes this rule.[6]

Moreover, § 506(a) specifies a secured claim is defined by the value of the secured creditor's interest in property of the estate, a definition which necessarily requires valuation of the estate's interest in the subject property.[7] Section 506 does not provide for what the Trustee is asking–essentially giving secured creditors pro rata shares of sales proceeds based on the percentage of all secured claims represented by such creditors' claims, giving no consideration to the value of assets other than the Pueblo Collateral. While it may be true that the value of the Pueblo Collateral constitutes a certain percentage of the proceeds of the sale of the Debtor's assets, § 506 requires distribution to secured creditors based on the actual value of their interest in estate property, not based on a value extrapolated from evidence of the value of the Pueblo Collateral. To do as the Trustee urges would result in giving each secured creditor a percentage of the sales proceeds based on the creditor's claim, not upon the value of the creditor's interest in the estate's interest in the property securing

---

[6] Order of March 23, 2012, at 7-8 (citing *In re LTV Steel Company, Inc.,* 285 B.R. 259, 266 (Bankr. N.D. Ohio 2002); Trustee's Closing Brief, at p. 4, ¶ 5).

[7] § 506(a)(1) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

the claim–in other words, to do the opposite of what § 506(a)(1) requires.[8] Therefore, the Court finds the Trustee has not stated grounds to alter or add to the findings made as to the valuation of the Pueblo Collateral in the March 23, 2012 Order.

As to the Trustee's assertion he is entitled to a surcharge of 18%, the Complaint indicates the Trustee is entitled to a surcharge against each of the originally-named defendants in a "pro rata amount no less than 17.75% of the value of the property securing such allowed secured claim."[9] The Trustee's unrebutted testimony was that he incurred $1,813,216.37 in costs and expenses of sale–indeed approximately 18% of the $10 million sales price. Based on the Complaint's seeking of "no less" than 17.75%, and the failure of Pueblo to offer evidence rebutting the amount or reasonableness of the costs and expenses, the Court will grant the Trustee's Motion as to the surcharge.

## CONCLUSION

Based on the above findings,

IT IS ORDERED the Trustee's Motion to Alter or Amend Judgment is denied insofar as it seeks allocation of the sales proceeds.

IT IS FURTHER ORDERED the Trustee's Motion to Alter or Amend Judgment is granted insofar as it seeks an award of an 18% surcharge.

IT IS FURTHER ORDERED the Court finds the value of Pueblo's lien to be $898,560.15, less $30,000 paid for Pueblo County personal property taxes and $161,740.83 for the Trustee's costs and expenses at 18%, for a total of $706,819.32

IT IS THEREFORE ORDERED the value of Pueblo's lien is $706,819.32, and the Trustee shall disburse that amount to Pueblo from the Sales Proceeds.

Dated May 30, 2012

BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge

---

[8] The Court must again note, this entire argument would have been unnecessary had the Trustee performed one of its contractual obligations under the Asset Purchase Agreement approved by this Court, by allocating the value of the Pueblo Collateral to the paid purchase price at the time of sale.

[9] Complaint at 10, ¶ 55.